2/8/2016 4:47:19 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9013874
By: Bonnie Lugo
Filed: 2/8/2016 4:47:19 PM

2016-08066 / Court: 011

CAUSE NO. _____

| | | |
|---|---|---|
| SABINA BEBEE, Individually and On Behalf of the ESTATE OF ROBERT BEBEE, DECEASED; MARY SULLIVAN, Individually and As Representative of the ESTATE OF ANNE SULLIVAN, DECEASED; NICOLE GARNER, As Representative of the ESTATE OF ROBERT GARNER, DECEASED; And AMY and ROBERT YARBROUGH<br>*Plaintiffs,*<br><br>vs.<br><br>MOTOROLA SOLUTIONS, INC. SCOTT SAFETY, INC., SCOTT HEALTH AND SAFETY, INC., MOTOROLA, INC., ACCESS DATA SUPPLY, INC., CTS CONSOLIDATED TELECOM SERVICES, LLC<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br><br><br>\_\_\_\_\_ JUDICIAL DISTRICT |

### PLAINTIFFS BEBEE, SULLIVAN, GARNER AND YARBROUGH'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW SABINA BEBEE, Individually and on behalf of the Estate of Robert Bebee, MARY SULLIVAN, Individually and as Representative of the Estate of Anne Sullivan, NICOLE GARNER, as Representative of the Estate of Robert Garner, and AMY and ROBERT YARBROUGH (collectively referred to as "Plaintiffs") and file this Original Petition against Defendants MOTOROLA SOLUTIONS, INC., SCOTT SAFETY, INC., SCOTT HEALTH AND SAFETY, INC., MOTOROLA, INC., ACCESS DATA SERVICES, INC., and CTS CONSOLIDATED TELECOM SERVICES, LLC ("Defendants") and show the following:


EXHIBIT B

I.

## DISCOVERY CONTROL PLAN

1.1  This lawsuit is requested to be governed under a Discovery Control Plan Level 3 as provided by the court.

II.

## REQUESTS FOR DISCLOSURE

2.1  Plaintiffs request that all Defendants disclose the information and material provided for production in TRCP 194.2(a)-(l).

III.

## PARTIES

3.1  Plaintiffs are Texas residents and reside in the jurisdiction of this court.

3.2  Motorola Solutions, Inc. is a Delaware corporation doing business in the State of Texas and can be served with process by serving its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.3  Scott Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with the State of Texas, directly or indirectly, when packaged with the Motorola Solutions Systems sold to the City of Houston. Service of process may be effectuated on this defendant under Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered mail,

addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road, Monroe, North Carolina 28110.

3.4    Scott Health and Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with the State of Texas, directly or indirectly, when packaged with the Motorola Solutions Systems sold to the City of Houston. Service of process may be effectuated on this defendant under Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered mail, addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road, Monroe, North Carolina 28110.

3.5    Motorola, Inc. is a Delaware corporation that contracted to repair and maintain the Houston Fire Department radios and has regularly conducted business in the State of Texas and in Houston and may be served with process by serving Mr. George M. Ebelt at 1140 Cypress Station Drive, Suite 300, Houston, TX 77090 and/or by serving its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.6    Access Data Supply, Inc. (ADSI) is a Texas Corporation engaged in marketing, servicing, and/or assisting in the provision and use of the Motorola products involved in the deaths and injuries to the plaintiffs alleged in this suit. This defendant may be served with process by serving its agent, Thomas Deon Warner, located at 550 Westcott Street, Suite 415, Houston, Texas, 77007.

Certified Document Number: 68908210 - Page 3 of 12

3.7     CTS Consolidated Telecom Services, LLC (CTS) is a Texas Corporation engaged in the marketing, servicing, provision and use of the Motorola products and advertising complained about in this case and contributing to the deaths and injuries of plaintiffs alleged in this suit. This defendant may be served with process by serving its registered agent, Pam Faver, located at 204 Texas Ave., Suite A, Round Rock, Texas, 78664.

## IV.

### BRIEF NOTICE FACTS

4.1.    On May 31, 2013, Plaintiffs Robert Bebee, Robert Garner, and Anne Sullivan died and Robert Yarbrough was severely injured when parts of a burning structure variously fell on them. They entered the burning structure confident that if they got in trouble they could radio for help to be immediately assisted. The radio devices they trusted were designed, manufactured and/or marketed by one or more of the defendants, and/or components of the radio system were designed, manufactured and/or marketed by one or more of the defendants. They did not know that the radios they trusted would betray them or fail under the very purposes for which they were intended. Unknown to the firefighters their Motorola Solutions System and Scott Safety system radios and components were defective and/or deficient in performance which delayed or prevented instructions to firefighters or cut them off entirely without notification to the users. Numerous other failures of the system caused delays in both rescue as well as evacuation from the building.

4.2     Motorola Solutions sold an approximately $140,000,000 digital radio system to the City of Houston for use by the Houston Fire Department. That system was allegedly designed to be suitable for use in situations such as the Southwest Inn fire in question in this case. The system

4

Certified Document Number: 68908210 - Page 4 of 12

is believed to have been implemented in April 2013. However, at the time of its implementation, despite representations by Motorola Solutions as to its suitability for use, it was unsuitable for the anticipated, foreseeable and actual fire use. Its failures included the following:

 a. Excessive "bonks" when a firefighter was shut out of the system and unable to access the system - 339 times in the first thirty minutes of the fire in question;
 b. Firefighters were shut out of the system 256 times after the collapse of the roof and when rescue efforts commenced;
 c. Digital Delays between the time a firefighter would speak and the time that the message was actually sent and received by another user;
 d. Excessive "quick keys" when a radio microphone was accidentally struck causing the Talk Group on the frequency to be "frozen" for 3-4 seconds;
 e. Digital Cliffs occurring suddenly, and without warning, when the radios would go out of range although the person would be only a few feet away;
 f. The use of the same "bonk" tone for both the out of range tone and the Talk Group busy tone so that the firefighter could not determine if the Talk Group was busy and so the firefighters could not determine if they just needed to wait in place to communicate or to move to be able to speak;
 g. Malfunctioning equipment not suited for firefighting under reasonably foreseeable conditions causing the housing and inside wiring of the devices to fuse making the radios inoperable;
 h. Unsuitable equipment causing the radio of one of the Downed Firefighters[1] to send out multiple keyed mic signals falsely suggesting voluntary radio activation when no such action was intended by the operator;
 i. Bleeding over from one Talk Group to another resulting in additional "bonks" preventing usage during the fire and restricting the available equipment needed for communications during fire and rescue operations;
 j. Provision of unsuitable equipment such that almost 6 minutes and 24 seconds of the first hour of the fire presented unusable talk time -- i.e., 10% of the first hour of the fire;
 k. Overriding firefighter communications by OEC radios with no notification to the firefighters in the building who would not know the emergency transmissions had not been heard despite indications that it had been successfully transmitted;
 l. Using radios with "Emergency Call" buttons that were unsuitable for use in a fire because the buttons were not conducive to use with gloves, resulting in the preposterous

---

[1] Senior Captain Matthew Renaud, Engineer Operator Robert Bebee, Firefighter Robert Garner and Probationary Firefighter Anne Sullivan are collectively referred to as the Downed Firefighters.

Certified Document Number: 68908210 - Page 5 of 12

situation that a firefighter in an emergency would have to remove protective gloves in the middle of firefighting to activate the radio's emergency call button.[2]

4.3     Because of the failures of the Motorola Solutions system necessary and foreseeable radio communications during the fire conditions were unreliable and resulted in firefighters using face to face communications, running to the recipients of messages, delaying the firefighting and rescue operations to the detriment and increased injuries to plaintiffs.

4.4     The Defendants were aware of the problems with the system and despite this knowledge marketed and sold the products representing that they were fit and suitable for use in fire conditions such as those at issue in this case.

4.5     The Motorola APX 7000 radio was supplied with a Scott E-Z Radio System and consisted of three components. The Scott E-Z Radio System components were inadequately protected from fire conditions with a thin casing that melted and caused involuntary "quick keying" to occur. "Quick keying" is a false indicator of intentional activation of a radio and resulted in Robert Yarbrough entering the building as part of rescue efforts resulting from false notification that a firefighter(s) was activating the quick key. The Motorola Solutions system further did not have any means of advising the users that such alerts were not a false indicator of volitional key activation as result of there being a short in the system. This malfunction, coupled with other unreliable and inadequate radio communications, delayed rescue efforts and enhanced caused plaintiffs' injuries. Rather than use radio communications which should have been instantaneous, firefighters were forced to yell and attempt more difficult ways of communicating to evacuate individuals. Such complications increased the risks and dangers confronted and

---

[2] Despite multiple firefighters on scene, trapped and injured, not one "Emergency Call Button" was activated in the Southwest Inn Fire.

6

Certified Document Number: 68908210 - Page 6 of 12

sustained by plaintiffs. Had firefighters known how unreliable the defendants' radio products were they would have used alternative methods rather than imperil themselves during fire and rescue operations.

4.6   Despite its $140,000,000 price-tag, the Motorola Solutions system was regrettably unsuitable for use in fire conditions, delayed or prevented necessary communications, and increased the risk of injury, death and harm to the firefighters on the ground and in the structure. This defective system resulted in and caused enhanced damages and injuries to the plaintiffs. These defendants also breached implied and express warranties relating to the communication systems, and failed to warn about the dangerous conditions created or promoted by their dangerous equipment.

4.7   In addition to defects, defendants marketed and sold the defective fire radio system without reasonable warnings about the device's limitations and defects. Indeed, instead of warning of defects, these defendants misled and misrepresented the capabilities of the system, including the failure to disclose frightening limitations that would put the lives of firefighters at risk. Defendants ADSI and CTS agreed to serve as subcontractors to partner with the other defendants to market, integrate and provide processing and instructions regarding Motorola's defective radio system. As such, all defendants are liable for the enhanced and actual damages to plaintiffs complained about in this suit. Further, because the devices concern life safety issues, the duties owed by all defendants were non-delegable. All defendants are sued for negligence, negligent marketing, failure to warn, deceptive trade practices, and strict liability.

4.8   Defendants' conduct, jointly and severally, was more than mere negligence or oversight, but was of such a reckless, defective and unconscionable nature that it rises to the level of legal

malice and gross negligence. Defendants' conduct caused Plaintiffs to enter burning structures with the misplaced trust and confidence that they could get out or be rescued quickly if they radioed for help. Instead, these firefighters' communications' were crippled and unable to convey even basic information to facilitate a speedy rescue because of the defendants' defective product. Defendants, jointly and severally, should be punished for their dangerous and reckless conduct and Plaintiffs seek punitive damages from each.

4.9    In addition to the deceased firefighters and Robert Yarbrough, this suit is filed on behalf of the wrongful death beneficiaries and loved ones possessing loss of consortium, loss of society, support, love and affection claims. Each of the plaintiffs seeks damages, both compensatory and punitive, from each of the defendants. The survival claims of the deceased plaintiffs are also brought in this suit against the defendants, jointly and severally.

V.

DESIGN, MARKETING, AND PRODUCT DEFECT CLAIMS

5.1    For reasons alleged herein and as may be proved at trial, each of the defendants is liable for one or more of the following claims that was/were a proximate cause of Plaintiffs damages: design defect, manufacturing defect, deceptive trade practices, strict liability, marketing defect, failure to warn, breach of warranty (implied and express), and for enhanced damages. The marketing defects included at least the following:

- representing that the Motorola radio system provided reliable communications when life and limb were at stake;
- representing that the Motorola system provided reliable controls for command operations;
- failing reasonably to disclose the restrictions and limitations of the system;
- failing to disclose problems about the "bonk" problems with the devices;
- providing unreasonably incomplete instructions on how the radios would fail to operate in real life scenarios;

8

Certified Document Number: 68908210 - Page 8 of 12

- failing to provide reasonable warnings to firefighters regarding operational limitations of the radio system prior to the fire made the basis of this suit; and
- overstating the abilities and reliability of the radio devices and communication system.

Had Plaintiffs known that defendants' devices and communication system were not as reliable as advertised and marketed, or that these devices would interfere with and impede the ability of others to reasonably communicate during a fire event, they would not have taken the risks they did take or would have taken other measures to safeguard against risks that resulted in their deaths and injuries complained of in this suit.

## VI.

## NEGLIGENCE

6.1   Defendants, jointly and severally, were negligent in designing, manufacturing, and/or marketing the products and their negligence was a proximate cause of Plaintiffs' injuries and damages. Plaintiffs also allege that defendants' products were intended to be used in ultra-hazardous activities and, as such, Defendants are liable for slight negligence and strict liability. Defendants were also negligent in failing to provide reasonable warning about their products.

## VII.

## AGENCY AND RESPONDEAT SUPERIOR THEORIES

7.1   Each defendant is alleged to be liable under theories of ostensible, apparent, implied and express agency. Each defendant is liable under theories of conspiracy, respondeat superior, single business enterprise, and principal/agent liability.

## VIII.

## GROSS NEGLIGENCE

8.1     Plaintiffs would further show that each of the acts, conduct and omissions of the Defendants, taken singularly or in combination, constitutes gross negligence, legal malice and were proximate and producing causes of the injuries and damages to plaintiffs. The conduct, acts and omissions of Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm; said Defendants had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of the firefighters. Such gross negligence/legal malice entitles Plaintiffs to recover exemplary damages against each defendant.

## IX.

## BREACH OF WARRANTY

9.1     The allegations contained herein are incorporated by reference as if set forth in full.

9.2     Plaintiffs further allege and intend to show that the defendants breached express, statutory and/or implied warranties, including but not limited to the warranties of fitness, use, and appropriateness as life-safety devices and fire communication systems.

## X.

## DAMAGES

10.1    Robert Yarbrough is suffering severe and permanently disabling injuries, including closed head injury, traumatic brain injury, PTSD, broken bones and body, and loss of the ability to function as he once did prior to the fire. All plaintiffs seek damages for injuries and death, as applicable, as follows: (a) past pain and suffering; (b) future pain and suffering; (c) past

Certified Document Number: 68908210 - Page 10 of 12

disfigurement; (d) future disfigurement; (e) past impairment; (f) future impairment; (g) past mental anguish; (h) future mental anguish; (i) past lost wages; (j) future lost wages; (k) past medical and other expenses; and (l) future medical and other expenses.

10.2  Plaintiffs Sabina Bebee, Mary Sullivan, and Amy Yarbrough seek their individual damages as claimants against each of the defendants, and representatively on behalf of the deceased firefighter plaintiffs.

10.3  The sum of Plaintiffs' damages is within the jurisdictional limits of the Court. Plaintiffs seek damages which are in excess of $1,000,000 each and all conditions precedent to bring the claims in this case have occurred or been performed by plaintiffs.

## XI.

## NOTICE OF INTENT TO USE DOCUMENTS

11.1  Notice is provided that Plaintiffs intend to use any and all materials, tangible things, information and/or documents produced and/or obtained via discovery in this case, subject to applicable evidentiary rules. This statement is not intended to be, nor is it, any admission that matters exchanged in discovery in this care are admissible in evidence.

## XII.

## JURY DEMAND

12.1  Plaintiffs demand a jury trial and the appropriate jury fee will be paid in accordance with the law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, as named herein, seek actual damages against the named defendants in at least the following particulars:

1) Actual damages in excess of $1,000,000.00 each;

11

2) Punitive damages in an amount in excess of $5,000,000.00;

3) Cost and interest (pre-and post-judgment);

4) Attorney's fees as permitted at law; and

5) All other relief to which Plaintiffs may be entitled.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

/s/ Benjamin L. Hall, III
Benjamin L. Hall, III
State Bar No. 08743745
William Van Fleet
State Bar No. 20494750
The Hall Law Firm
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 942-9600
Facsimile: (713) 942-9566



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 18, 2016

Certified Document Number:        68908210 Total Pages:  12

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**