3/10/2016 1:10:15 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9537802
By: Tammy Tolman
Filed: 3/10/2016 1:10:15 PM

CAUSE NO. 2016-08066

| | | |
|---|---|---|
| **SABINA BEBEE, Individually and** § | | **IN THE DISTRICT COURT OF** |
| **On Behalf of the ESTATE OF** § | | |
| **ROBERT BEBEE, DECEASED;** § | | |
| **MARY SULLIVAN, Individually and** § | | |
| **As Representative of the ESTATE OF** § | | |
| **ANNE SULLIVAN, DECEASED;** § | | |
| **NICOLE GARNER,** § | | |
| **As Representative of the ESTATE** § | | |
| **OF ROBERT GARNER, DECEASED;** § | | |
| **AMY and ROBERT YARBROUGH,** § | | |
| **DAVID RENAUD, on Behalf of the** § | | |
| **Estate of MATTHEW RENAUD and** § | | |
| **XAVIER RENAUD and BARBARA** § | | |
| **PEREZ, Parents of MATTHEW** § | | |
| **RENAUD** § | | |
| *Plaintiffs,* § | | |
| § | | |
| **vs.** § | | **HARRIS COUNTY, TEXAS** |
| § | | |
| **MOTOROLA SOLUTIONS, INC.** § | | |
| **SCOTT SAFETY, INC., SCOTT** § | | |
| **HEALTH AND SAFETY, INC.,** § | | |
| **MOTOROLA, INC., ACCESS DATA** § | | |
| **SUPPLY, INC., CTS CONSOLIDATED** § | | |
| **TELECOM SERVICES, LLC** § | | |
| *Defendants.* § | | **11th JUDICIAL DISTRICT** |

**PLAINTIFFS BEBEE, SULLIVAN, GARNER, RENAUD AND YARBROUGHS'
<u>FIRST AMENDED ORIGINAL PETITION</u>**

**TO THE HONORABLE JUDGE OF SAID COURT:**

  **COME NOW** SABINA BEBEE, Individually and on behalf of the Estate of Robert Bebee,

MARY SULLIVAN, Individually and as Representative of the Estate of Anne Sullivan, NICOLE

GARNER, as Representative of the Estate of Robert Garner, AMY and ROBERT YARBROUGH,

DAVID RENAUD as Representative of the Estate of Matthew Renaud, and XAVIER RENAUD



and BARBARA PEREZ, Parents of Matthew Renaud (collectively referred to as "Plaintiffs") and file this First Amended Original Petition against Defendants MOTOROLA SOLUTIONS, INC., SCOTT SAFETY, INC., SCOTT HEALTH AND SAFETY, INC., MOTOROLA, INC., ACCESS DATA SERVICES, INC., and CTS CONSOLIDATED TELECOM SERVICES, LLC ("Defendants") and show the following:

## I.

## DISCOVERY CONTROL PLAN

1.1   This lawsuit is requested to be governed under a Discovery Control Plan Level 3 as provided by the court or agreed to by the parties.

## II.

## REQUESTS FOR DISCLOSURE

2.1   Plaintiffs request that all Defendants disclose the information and material provided for production in TRCP 194.2(a)-(l).

## III.

## PARTIES

3.1   Plaintiffs are Texas residents and reside within the jurisdiction of this court.

3.2   Motorola Solutions, Inc. is a Delaware corporation doing business in the State of Texas and can be served with process by serving its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.3   Scott Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with

Certified Document Number: 69344457 - Page 2 of 13

the State of Texas, directly or indirectly, when packaged with the Motorola Solutions and Motorola Systems sold to the City of Houston. Service of process may be effectuated on this defendant under Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered mail, addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road, Monroe, North Carolina 28110.

3.4     Scott Health and Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with the State of Texas, directly or indirectly, when packaged with the Motorola Solutions and Motorola Systems sold to the City of Houston. Service of process may be effectuated on this defendant under Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered mail, addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road, Monroe, North Carolina 28110.

3.5     Motorola, Inc. is a Delaware corporation that contracted to repair and maintain the Houston Fire Department radios and has regularly conducted business in the State of Texas and in Houston and may be served with process by serving Mr. George M. Ebelt at 1140 Cypress Station Drive, Suite 300, Houston, TX 77090 and/or by serving its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.6     Access Data Supply, Inc. (ADSI) is a Texas Corporation engaged in marketing, servicing, and/or assisting in the provision and use of the Motorola products involved in the deaths and

Certified Document Number: 69344457 - Page 3 of 13

injuries to the plaintiffs alleged in this suit. This defendant may be served with process by serving its agent, Thomas Deon Warner, located at 550 Westcott Street, Suite 415, Houston, Texas, 77007.

3.7    CTS Consolidated Telecom Services, LLC (CTS) is a Texas Corporation engaged in the marketing, servicing, provision and use of the Motorola products and advertising complained about in this case and contributing to the deaths and injuries of plaintiffs alleged in this suit. This defendant may be served with process by serving its registered agent, Pam Faver, located at 204 Texas Ave., Suite A, Round Rock, Texas, 78664.

## IV.

## BRIEF NOTICE FACTS

4.1.    On May 31, 2013, Plaintiffs Robert Bebee, Robert Garner, Anne Sullivan and Matthew Renaud died and Robert Yarbrough was severely injured when parts of a burning structure variously fell on or impacted their bodies and they believed they could be rescued or warned of dangerous conditions because they were provided communication devices manufactured, designed, marketed, repaired or provided by defendants. They entered the burning structure confident that if they got in trouble they could radio for help to be immediately assisted. Because they had been lead to believe their radio equipment was reliable they entered the structure. The radio devices they trusted were designed, manufactured, repaired and/or marketed by one or more of the defendants, and/or components of the radio system were designed, manufactured and/or marketed by one or more of the defendants. Defendants failed to warn and/or train about the limitations and problematic features that would frustrate reasonable radio communications. Plaintiffs did not know that the radios they trusted would betray them or fail under the very purposes for which they were sold, marketed and intended. Unknown to the firefighters their

Certified Document Number: 69344457 - Page 4 of 13

Motorola Solutions System and Scott Safety system radios and components were defective and/or deficient in performance which delayed or prevented instructions to firefighters or cut them off entirely without notification to the users. Also, the manner in which the devices were marketed overstated their reliability, which marketed created confidence in the plaintiff firefighters that they could enter fire conditions and remain in contact with other firefighters if a danger were to arise.

4.2     Motorola Solutions sold an approximately $140,000,000 digital trunk radio system to the City of Houston for use by the Houston Fire Department and other departments. That system was allegedly marketed, manufactured, designed and warranted to be suitable for use in fire condition such as were confronted by firefighters during the Southwest Inn fire in question in this case. The system is believed to have been placed in operation by the City while it was still under the Motorola defendants control in March 2013. However, at the time of its implementation, despite representations by the defendants that the system and components were suitability for the intended use, it was in fact unsuitable for the anticipated, foreseeable, intended and warranted use. Its failures included at least the following:

    a.     Excessive "bonks" which caused firefighters to be shut out of the system and unable to access the system - 339 times in the first thirty minutes of the fire in question;
    b.     Firefighters were shut out of the system 256 times after the collapse of the roof and when rescue efforts commenced;
    c.     Digital Delays between the time a firefighter would speak and the time that the message was actually sent and received by another user;
    d.     Excessive "quick keys" when a radio microphone was accidentally struck causing the Talk Group on the frequency to be "frozen" for 2-4 seconds;
    e.     Unanticipated digital cliffs occurring suddenly, and without warning, when the radios would not allow communications between firefighters standing only a few feet away from one another;
    f.     The use of the same "bonk" tone for both the out of range tone and the Talk Group busy tone so that firefighters could not determine if the Talk Group was busy and so the firefighters could not determine if they just needed to wait in place to communicate or to move to be able to speak;

Certified Document Number: 69344457 - Page 5 of 13

    g.    Malfunctioning equipment not suited for firefighting under reasonably foreseeable conditions that allowed the housing and inside wiring of certain parts of the devices to fuse or short making the radios inoperable;

    h.    Unsuitable equipment causing the radio of one of the Downed Firefighters[1] to send out multiple keyed mic signals falsely suggesting voluntary radio activation when no such action was intended by the operator;

    i.    Bleeding over from one Talk Group to another resulting in additional "bonks" preventing usage during the fire and restricting the available equipment needed for communications during fire and rescue operations;

    j.    Provision of unsuitable equipment such that almost 6 minutes and 24 seconds of the first hour of the fire presented unusable talk time -- i.e., 10% of the first hour of the fire;

    k.    Overriding firefighter communications by OEC radios with no notification to the firefighters in the building who would not know the emergency transmissions had not been heard despite indications that it had been successfully transmitted;

    l.    Using radios with "Emergency Call" buttons that were unsuitable for use in a fire because the buttons were not conducive to use with firefighting gloves, resulting in the preposterous situation that a firefighter in an emergency would have to remove protective gloves in the middle of firefighting to activate the radio's emergency call button.[2]

    m.    Providing false claims of reliability of the radio system that created misplaced confidence in firefighters that they could enter dangerous structures and remain in contact with rescuers;

    n.    Failing to train firefighters about the limitations and delays in the new radio equipment;

    o.    Unreasonably programming a 2-4 second "block-out" when the talk button was depressed, which had the effect of preventing effective communications during the emergency rescue efforts;

    p.    Creating through marketing efforts a false belief that firefighters would reliably remain in contact with help if need were to arise when no such reliance was reasonably based given the limitations of the system and the transitional limitations in the system.

4.3    Because of the failures and limitations of the radio system necessary and foreseeable communications during the fire conditions were unreliable and resulted in firefighters entering dangerous conditions and having to use face to face communications, running to the recipients of

---

[1] Senior Captain Matthew Renaud, Engineer Operator Robert Bebee, Firefighter Robert Garner and Probationary Firefighter Anne Sullivan are collectively referred to as the Downed Firefighters.

[2] Despite multiple firefighters on scene, trapped and injured, not one "Emergency Call Button" was activated in the Southwest Inn Fire.

Certified Document Number: 69344457 - Page 6 of 13

messages, and delaying the firefighting and rescue operations to the detriment and increased and enhanced injuries to plaintiffs.

4.4     The Defendants were aware, or should have been aware, of the problems and limitations of the system and despite this knowledge marketed and sold the products representing that they were fit, reliable and suitable for use in fire conditions such as those at issue in this case.

4.5     The Motorola APX 7000 radio was supplied with a Scott E-Z Radio System and consisted of three components. The Scott E-Z Radio System components were inadequately protected from fire conditions with a thin casing that melted and caused involuntary "quick keying" to occur. "Quick keying" is a false indicator of intentional activation of a radio and resulted in Robert Yarbrough entering the building as part of rescue efforts resulting from false notification that a firefighter(s) was activating the quick key. The Motorola Solutions system further did not have any means of advising the users that such alerts were not a false indicator of volitional key activation as result of there being a short in the system. This malfunction, coupled with other unreliable and inadequate radio communications, delayed rescue efforts and enhanced plaintiffs' injuries. Rather than use radio communications which should have been instantaneous, firefighters were forced to yell and attempt more difficult ways of communicating to evacuate individuals. Such complications increased the risks and dangers confronted and sustained by plaintiffs. Had firefighters known how unreliable the defendants' radio products were they would have used alternative methods rather than imperil themselves during fire and rescue operations. One such alternative would have been not to enter the burning building and continue fire suppression efforts from the outside.

4.6     Despite its $140,000,000 price-tag, the radio system was regrettably unsuitable for use in fire conditions, delayed or prevented necessary communications, created unrealistic confidence in its reliability, and increased or enhanced the risk of injury, death and harm to the firefighters on the ground and in the burning structure. This defective system resulted in and caused enhanced damages and injuries to the plaintiffs.  Defendants breached implied and express warranties relating to the communication systems, and failed to train or warn about the dangerous conditions created, encouraged or promoted by their marketing campaign and dangerous equipment.

4.7     In addition to defects, defendants marketed and sold the defective radio system without reasonable warnings about the device's limitations, programming defaults, and defects.  Indeed, instead of warning of such, defendants misled, over-stated and/or misrepresented the capabilities of the system, including the failure to disclose frightening limitations that would put the lives of firefighters at risk.  Defendants ADSI and CTS agreed to serve as subcontractors to partner with the other defendants to market, integrate, train and provide processing and instructions regarding the radio system.  As such, all defendants are liable for the enhanced and actual damages to plaintiffs complained about in this suit.  Further, because the devices concerned life safety issues, the duties owed by all defendants were non-delegable.  All defendants are sued for at least negligence, negligent marketing, failure to warn, deceptive trade practices, and strict liability.

4.8     Defendants' conduct, jointly and severally, was more than mere negligence or oversight, but was of such a reckless, defective and unconscionable nature that it rises to the level of legal malice and/or gross negligence. Defendants' conduct caused Plaintiffs to enter burning structures with the misplaced trust and confidence that they could get out or be rescued quickly if they radioed for help.  Instead, the communications' were crippled and unable to convey even basic information

Certified Document Number: 69344457 - Page 8 of 13

to facilitate a speedy rescue. Defendants, jointly and severally, should be punished for their dangerous and reckless marketing and conduct. Plaintiffs seek punitive damages from each defendant. Further, to the extent the defendants aggressively marketed the capabilities of the radio system, but failed to warn of its limitations or train firefighters regarding its programming and operational limitations, the defendants were flagrant in their gross negligence.

The defendants were engaged in an ultra-hazardous business activity or inherently dangerous activity and are strictly liable for the losses and damages complained of in this case.

4.9   In addition to the deceased firefighters and Robert Yarbrough, this suit is filed on behalf of the wrongful death beneficiaries and loved ones possessing loss of consortium, loss of society, support, love and affection claims. Each of the plaintiffs seeks damages, both compensatory and punitive, from each of the defendants. The survival claims of the deceased plaintiffs are also brought in this suit against the defendants, jointly and severally.

## V.

## DESIGN, MARKETING AND PRODUCT DEFECT CLAIMS

5.1   For reasons alleged herein and as may be proved at trial, each of the defendants is liable for one or more of the following claims that was/were a proximate or producing cause of Plaintiffs' losses and damages: design defect, manufacturing defect, deceptive trade practices, strict liability, marketing defect, failure to warn, breach of warranty (implied and express), and for enhanced damages. The marketing defects included at least the following:

- representing that the radio system provided reliable communications when life and limb were at stake;
- representing that the radio system and radios provided reliable controls for command operations;
- failing reasonably to disclose the restrictions and limitations of the system and radios;

Certified Document Number: 69344457 - Page 9 of 13

- failing to disclose problems about the "bonk," built in delays and 2-4 second shut-outs designed into the radio devices;
- providing unreasonable and incomplete instructions on how the radios would fail to operate in real life and death scenarios;
- failing to provide reasonable warnings to firefighters regarding operational limitations of the radio system prior to the fire made the basis of this suit; and
- overstating the abilities and reliability of the radio devices and communication system.

Had Plaintiffs known that defendants' devices and communication system were not as reliable as advertised and marketed, or that these devices would interfere with and impede the ability of others to reasonably communicate during a fire or rescue event, they would not have taken the risks they did take or would have taken other measures to safeguard against risks that resulted in their deaths and injuries complained of in this suit.

## VI.

## NEGLIGENCE

6.1     Defendants, jointly and severally, were negligent in designing, manufacturing, warning, training, and/or marketing the products and their negligence was a proximate or producing cause of Plaintiffs' injuries and enhanced damages.  Plaintiffs also allege that defendants' products were intended to be used in inherently dangerous activities and, as such, Defendants are strictly liable for the damages complained of in this suit. Defendants were also negligent in failing to provide reasonable warning about and training regarding their products. Defendants were also involved in an inherently dangerous activity and are strictly liable for the losses being sought in this case.

Certified Document Number: 69344457 - Page 10 of 13

## VII.

## AGENCY AND RESPONDEAT SUPERIOR THEORIES

7.1     Each defendant is alleged to be liable under theories of ostensible, apparent, implied and express agency and partnership.  Each defendant is liable under theories of conspiracy, respondeat superior, single business enterprise, and principal/agent liability.

## VIII.

## GROSS NEGLIGENCE

8.1     Plaintiffs would further show that each of the acts, conduct and/or omissions of the Defendants, taken singularly or in combination, constitutes gross negligence, legal malice and were proximate and/or producing causes of the injuries and damages suffered by plaintiffs. The conduct, acts and omissions of Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm, Defendants had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of the firefighters and their loved once.  Such gross negligence/legal malice entitles Plaintiffs to recover exemplary damages against each defendant or jointly and severally.

## IX.

## BREACH OF WARRANTY

9.1     The allegations contained herein are incorporated by reference as if set forth in full.

9.2     Plaintiffs further allege and intend to show that the defendants breached express, statutory and/or implied warranties, including but not limited to the warranties of fitness, use, and appropriateness as life-safety devices and fire communication equipment and training.

Certified Document Number: 69344457 - Page 11 of 13

9.3   Defendants conduct also constitutes deceptive trade practices and punitive and/or treble damages should be awarded against the offending defendants

## X.

## DAMAGES

10.1   Robert Yarbrough is suffering severe and permanent disabling injuries, including closed head injury, traumatic brain injury, PTSD, broken bones and body, and loss of the ability to function as he once did prior to the fire. All plaintiffs seek damages for injuries and death, as applicable, as follows: (a) past pain and suffering; (b) future pain and suffering; (c) past disfigurement; (d) future disfigurement; (e) past impairment; (f) future impairment; (g) past mental anguish; (h) future mental anguish; (i) past lost wages; (j) future lost wages; (k) past medical and other expenses; and (l) future medical and other expenses.

10.2   Plaintiffs Sabina Bebee, Mary Sullivan, Amy Yarbrough, Xavier Renaud, and Barbara Perez seek their individual damages as claimants against each of the defendants, and representatively on behalf of the deceased firefighter plaintiffs where allowed at law.

10.3   The sum of Plaintiffs' damages is within the jurisdictional limits of the Court. Plaintiffs seek damages which are in excess of $1,000,000 each and all conditions precedent to bring the claims in this case have occurred or been performed by plaintiffs.

## XI.

## NOTICE OF INTENT TO USE DOCUMENTS

11.1   Notice is provided that Plaintiffs intend to use any and all materials, tangible things, information and/or documents produced and/or obtained via discovery in this case, subject to

Certified Document Number: 69344457 - Page 12 of 13

applicable evidentiary rules. This statement is not intended to be, nor is it, any admission that matters exchanged in discovery in this care are admissible in evidence.

## XII.

## JURY DEMAND

12.1   Plaintiffs demand a jury trial and the appropriate jury fee will be paid in accordance with the law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, as named herein, seek damages against the named defendants in at least the following particulars:

1) Actual damages in excess of $1,000,000.00 each;

2) Punitive damages in an amount in excess of $5,000,000.00;

3) Cost and interest (pre-and post-judgment);

4) Attorney's fees as permitted at law; and

5) All other relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Benjamin L. Hall, III
Benjamin L. Hall, III
State Bar No. 08743745
William Van Fleet
State Bar No. 20494750
The Hall Law Firm
530 Lovett Blvd.
Houston, Texas  77006
Telephone:  (713) 942-9600
Facsimile:  (713) 942-9566

Certified Document Number: 69344457 - Page 13 of 13



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 18, 2016

Certified Document Number:        69344457 Total Pages:  13

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**