IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SABINE BEBEE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ROBERT BEBEE, DECEASED; MARY SULLIVAN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ANNE SULLIVAN, DECEASED; NICOLE GARNER, AS REPRESENTATIVE OF THE ESTATE OF ROBERT GARNER, DECEASED; AMY AND ROBERT YARBROUGH, DAVID RENAUD, ON BEHALF OF THE ESTATE MATTHEW RENAUD AND XAVIER RENAUD AND BARBARA PEREZ, PARENTS OF MATTHEW RENAUD | § § § § § § | |
| Plaintiffs, | | |
| vs. | § § § | Civil Action No. 4:16-cv-00763 |
| | | **Jury Requested** |
| MOTOROLA SOLUTIONS, INC., SCOTT SAFETY, INC. SCOTT HEALTH AND SAFETY, INC. MOTOROLA, INC. ACCESS DATA SUPPLY, INC., CTS CONSOLIDATED TELECOM SERVICES, INC., LLC Defendants. | § § § § § § § § § § | |

## PLAINTIFF JACK SULLIVAN'S PETITION IN INTERVENTION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jack Sullivan ("Intervenor-Plaintiff"), who brings this cause of action against Motorola Solutions, Inc.. Scott Safety, Inc. Scott Health and Safety, Inc. Motorola, Inc. Access Data Supply, Inc. CTS Consolidated Telecom Services, Inc. LLC ("Defendants"), and would respectfully show unto the Court as follows:

I.

## DISCOVERY CONTROL PLAN

1.    Pursuant to Rule 190 of the Texas Rules of Civil Procedure, Intervenor-Plaintiff states that discovery in this case is intended to be conducted under Level 3 as provided by the Court or agreed to by the parties.  The monetary damages of this case exceed $100,000.00

II.

## PARTIES

2. Plaintiff Mary Sullivan is a natural person residing in Fort Bend County, Texas.  Plaintiff appears in her individual capacity and as the personal representative of the Estate of Anne Sullivan.

3 Intervenor-Plaintiff Jack Sullivan is a natural person residing in Harris County, Texas. Intervenor-Plaintiff appears in his individual capacity

4.   Defendant Motorola Solutions, Inc. has agreed to accept service of this Petition.

5.   Defendant  with Access.Data Supply, Inc. has agreed to accept service of this Petition Defendant Scott Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with the State of Texas, directly or indirectly, when packaged with the Motorola Solutions and Motorola Systems sold to the City of Houston. Service of process may be effectuated on this defendant Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered

mail, addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road Monroe, North Carolina 28110.

6.    Defendant Scott Health and Safety, Inc. is not believed to be licensed to do business in the State of Texas but regularly transacts business in the  State of Texas as part of its sales of its communications system and equipment for use with fire department personnel. This lawsuit arises out of its contacts with the State of Texas, directly or indirectly, when packaged with the Motorola Solutions and Motorola Systems sold to the City of Houston. Service of process may be effectuated on this defendant Article 2.11 of the Texas Corporation Act by serving the Texas Secretary of State who shall immediately cause one of the copies of the petition to be forwarded by registered mail, addressed to the corporation Scott Safety at its registered office: Scott Safety, 4320 Goldmine Road Monroe, North Carolina 28110.

7.    CTS Consolidated Telecom Services, LLC (CTS) is a Texas Corporation engaged in the marketing, servicing, provision and use of the Motorola products and advertising complained about in this case and contributing to the death and injuries of Plaintiff Anne Sullivan in this suit. This defendant may be served with process by serving its registered agent Pam Faver, located at 204  Texas Ave., Suite A, Round Rock, Texas 78664.

8.    Pursuant to TEX. R. CIV. P. 28, Plaintiffs specifically invoke their right to institute this suit against each and every Defendant in all of their partnerships, assumed, or common names, and any other names they have used or that have been used to designate them.

III.

## JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction and the amount in controversy exceeds the minimum jurisdictional limits of the Court.

10.     Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002 and 101.102 because all or a substantial part of the cause of action occurred in Harris County, Texas.

IV.

## FACTUAL BACKGROUND

11.     On May 31, 2013 Plaintiff Anne Sullivan was severely injured when parts of a burning structure variously fell on or impacted her body and she believed that she could be rescued or warned of dangerous conditions because she was provided with communincation devices manufactured, designed, marketed, repaired or provided by defendants. She entered the burning structure confident that if she got in trouble she could radio for help to be immediately ssisted. Because they had been lead to believe her radio equipment was reliable she entered the structure. The radio devices she trusted were designed, manufactured, repaired and o or marketed by one or more of the defendants, and\or components of the radio system were designed, manufactured marketed by one or more of the defendants. Defendants failed to warn and or train about the limitations and problematic features that would frustrate reasonable radio communications. Plaintiff did not know that the radios she trusted would betray her or fail under the very purposes for which they were sold, marketed and intended. Unknown to Anne Sullivan her Motorola Solution System and Scott Safety radios and components were defective and\or deficient in

performance which delayed or prevented instructions to firefighters or cut her off entirely without notification to the users. Also the manner in which the devices were marketed overstated their reliability, which marketed created confidence in the Plaintiff firefighters that they could enter fire conditions and remain in contact with other firefighters if a danger were to arise.

12.    Motorola Solutions sold an approximately $140,000,000. Digital trunck radio system to the City of Houston for use by the Houston Fire Department and other departments. The system was allegedly, marketed, manufactured, designed and warranted o be suitable for use in fire condition such as were confronted by Anne Sullivan and other firefighters during the Southwest Inn fire in question in this case. The system is believed to have been placed in operation by the City while it was still under the Motorola defendants control in March 2013. However, at the time of its implementation, despite representations by the Defendant that the system and components were suitable for intended use, it was in fact unsuitable for the anticipated, foreseeable intended and warranted use. Its failures included at least the following:

        a.    Excessive "bonks" which caused firefighters to be shut out of the syste and unable to access the system 339 times in the first thirty minutes of the fire in question;

        b.    Firefighters were shut out of the system 256 times after the collapse of the roof and when rescue efforts commenced;

        c.    Digital Delays between the time a firefighter would speak and the time that the message was actually sent and received by another user.;

        d.    Excessive "quick keys" when a radio microphone was accidentally struck causing the Talk group on the frequency to be "frozen for 2-4 seconds;

e.  Unanticipated digital cliffs occurring suddenly and without warning , when the radios would not allow communications between firefighters standing only a few feet away from one another;

f.  The use of the same "bonk" tone for both the out of range tone an d the Talk Group busy tone so that firefighters could not determine if the talk Group was busy and so the firefighters could determine if they needed to wait in place to communicate or to move to be able to speak;

g.  Malfunctioning equipment not suited for fighting nd under reasonably foreseeable conditions that allowed the housing and inside wiring of certin part of the devices to fuse  or short making the radios inoperable;

h.  Unsuitable equipment causing the radio  of one of the Down Firefighters to send out multiple keyed mic signals falsely suggesting voluntary radio activation when no such action was intended by the operator;

i.  Bleeding over from one Talk Group to another resulting in additional "bonks" preventing usage during  the fire and restricting the available equipment needed for communication during dire and rescue operations;

j.  Provision of unsuitable equipment such that almost 6 minutes and 24 seconds of the first hour of the fire presented unusable talk time—i.e. 10% of the first hour of the fire;

k.  Overriding firefighter communications by OEC radio with no notification to the firefighters in the building who would not know the emergency transmission had not been heard despite indications that it had been successfully transmitted;

l.  Using radios with "Emergency Call" buttons that were unsuitable for use in a fire because the buttons were not conducive to use with firefighting gloves resulting in the preposterous situation that a firefighter in an emergency would have to remove protective gloves in the middle of firefighting to activate the radio's emergency call button. (Despite multiple firefighters on scene, trapped and injured, no one "Emergency Call Button" was activated in the Southwest Inn Fire.)

m.  Providing false claims of reliability of the radio system that created misplaced confidence in firefighters that they could enter dangerous structures and remain in contact with rescuers;

n.  Failing to train firefighters about the limitation and delays in the new radio equipment;

o.  Unreasonably programming a 2-4 second "block out " when the tal button was depressed, which had the effect of preventing effective communication during the emergency rescue efforts;

p.  Creating through marketing efforts a false belief that firefighters would reliably remain in contact with help if need were to arise when no such reliance was reasonably based on given the limitations of the system and the transitional limitations in the system.

13. Because of the failures and limitations of the radio system necessary and foreseeable communications during the fire conditions  were unreliable  and resulted in firefighters entering dangerous conditions and having to use face to face communications, running

to the recipients of messages and delaying the firefighting and rescue operations to the detriment and increased and enhanced injuries to plaintiff Anne Sullivan

14. The Defendants were aware, or should have been aware, of the problems and limitations of the system and despite this knowledge marketed and sold the products representing that they were fit, reliable and suitable for use in fire conditions such as those at issue in this case.

15. The Motorola APX 7000 radio was supplied with a Scot E-Z Radio System and consistent of three components. The Scott E-Z Radio System components were inadequate protected from fire conditions with a thin casing that melted and caused involuntary 'quick keying' to occur. 'Quick keying is a false indicator of intentional activation of a radio and resulted in Anne Sullivan entering the building as part of rescue efforts resulting from false notifications that a firefighters activating the quick key. The Motorola Solutions system further did not have any means of advising the users that such alerts were not a false indicator of volitional key activation as a result of there being a short in the system. This malfunction, coupled with other unreliable and inadequate radio communication delayed rescue efforts and enhanced plaintiff's injuries. Rather than use radio communications which should have been instantaneous, firefighters were forced to yell and attempt more difficult ways of communicating to evacuate individuals. Such complications increased the risks and dangers confronted and sustained by Anne Sullivan. Had Anne Sullivan the other firefighters known how unreliable the defendant radio products were they would have used alternative methods rather than imperil themselves during fire and rescue operations. One such alternative would have been not to enter the burning building and continue fire suppression efforts

from the outside. Despite its $140,000,000 price tag, the radio system was regrettably unsuitable for use in fire conditions, delayed or prevented necessary communications created unrealistic confidence in its reliability and increased or enhanced the risk of injury death and harm to the firefighters on the ground and in the burning structure. This defective system resulted in and caused enhanced damages and injuries to Anne Sullivan and the other firefighters. Defendants breached implied and express warranties relating to the communication system and failed to train or warn about the dangerous conditions created, encouraged or promoted by their marketing campaign and dangerous equipment.

16. In addition to defects, defendants marketed and sold the defective radio system without reasonable warnings about the device's limitations, programming defaults, and defects. Indeed instead of warning of such defendants misled, overstated and\or misrepresented the capabilities of the system, including the failure to disclose frightening limitations that would put the lives of the firefighters at risk. Defendants ADSI and CTS agreed to serve as subcontractor to partner with the other defendants to market, integrate, train and provide processing and instructions regarding the radio system. As such all defendants are liable for the enhanced and actual damages to Anne Sullivan complained of in this suit. Further because of the devices concerned life safety issues the duties owed by all defendant were non-delegable. All defendants are sued for atleast negligence, negligent marketing failure to warn, deceptive trade practices, and strict liability.

17. Defendants conduct, jointly and severally, was more than mere negligence or oversight but was of such a reckless, defective and unconscionable nature that it rises to the level of legal malice and or gross negligence. Defendants' conduct caused Plaintiffs to enter a burning structures with misplaced trust and confidence that they could get out or be rescued quickly if they radioed for help. Instead, the communications' were crippled and unable to convey even basic information to facilitate a speedy rescue. Defendants, jointly and severally, should be punished for their dangerous and reckless marketing and conduct. Plaintiffs seek punitive damages from each defendant. Further to the extent the defendant aggressively marketed the capabilities of the radio system, but failed to warn of its limitations or train firefighters regarding its programming and operational limitations, the defendants were flagrant in their gross negligence.

18. The defendants were engaged in an ultra-hazardous business activity or inherently dangerous activity and are strictly liable for the losses and damages complained of in this case.

19.    This suit is filed on behalf of the Jack Sullivan the surviving father of decedent Anne Sullivan for his loss of society, support, love and affection claims. Plaintiff Jack Sullivan seeks damages both compensatory and punitive from each of the defendants

V.

**DESIGN, MARKETING AND PRODUCT DEFECT CLAIMS**

20. For reasons alleged herein and as may be proved at trial, each of the defendants is liable for one or more of the following claims that was\were a proximate or producing cause of Plaintiff's losses and damages; design defect, manufacturing defect, deceptive trade practices, strict liability, marketing defect, failure to warn, breach of warranty (implied

and express), and for enhanced damages. The marketing defects included at least the following:

--representing that the radio system provided reliable communications when life and limb were at stake;

--representing that the radio system and radios provided reliable controls for command operations;

--failing reasonably to disclose the restrictions and limitations of the system and radios;

--failing to disclose problems about the "bonk", built in delays and 2-4 second shut- outs designed into the radio devices;

--providing unreasonable and incomplete instructions on how the radios would fail to operate in real life and death scenarios;

--failing to provide reasonable warnings to firefighters regarding operational limitations of the radio system prior to the fire made the basis of this suit; and

--overstating the abilities and reliability of the radio devices and communication system.

Had Plaintiff known that the defendant's devices and communication system were not reliable as advertised and marketed, or that these devices would interfere with and impede the ability of others to reasonably communicate during a fire or rescue event, they would not have taken the risks they did take or would have taken other measures to safeguard against risks that resulted in their deaths and injuries complained of in this suit.

## VI.

## NEGLIGENCE

Defendants, jointly and severally, were negligent in designing, manufacturing, warning, training and or marketing the products and their negligence was a proximate or producing

cause of Plaintiff's injuries and enhanced damages. Plaintiffs also allege that defendants' products intended to be used in inherently dangerous activities ad, as such, Defendants are strictly liable for the damages complained of in this suit. Defendants were also negligent in failing to provide reasonable warning about and training regarding their products. Defendants were also involved in an inherently dangerous activity and are strictly liable for the losses being sought in this case.

## VII.

## AGENCY AND RESPONDEAT SUPERIOR THEORIES

Each defendant is alleged to be liable under theories of ostensible, apparent, implied and express agency and partnership. Each defendant is liable under theories of conspiracy, respondeat superior, single business enterprise, and principal\agent liability.

## VIII.

## GROSS NEGLIGENCE

Plaintiff would further show that each of the acts, conduct and\orr omissions of the Defendants, taken singularly or\in combination , constitute gross negligence, legal malice and were proximate and or producing causes of the injuries and damages suffered by Plaintiff. The conduct, acts and or omissions of Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm, Defendants had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of the firefighters and their loved ones. Such gross negligence\legal malice entitles Plaintiff to recover exemplary damages against each defendant or jointly and severally.

## IX.

### BREACH OF WARRANTY

The allegations contained herein are incorporated by reference as if set forth in full.

Plaintiff further alleges and intends to show that the defendants breached expressed, statutory and or implied warranties, including but not limited to the warranties of fitness, use and appropriateness as life-safety devices and fire communication equipment and training.

Defendants conduct also constitutes deceptive trade practice and punitive and or treble damages should be awarded against the offending defendants.

## X.

### BREACH OF THIRD PARTY BENEFICIARY CONTRACT

Plaintiff would show that at all material times Anne Sullivan decedent was an intended third party beneficiary of a certain contracts and purchase agreements the City of Houston entered into with the Defendants. The Defendants breached their obligations to Anne Sullivan and such breach resulted in her untimely death and the losses that ultimately resulted to intervenor Jack Sullivan.

## XI.

### DAMAGES.

Plaintiff Jack Sullivan seeks his individual damages as claimants against each of the defendants where allowed by law.   The sum of Plaintiff's damages is within the jurisdictional limits of the Court. Plaintiff seeks damages which are in excess of $1,000,000.00 and all conditions precedent to bring the claims in this case have occurred or been performed by Plaintiff.

### XII

### NOTICE OF INTENT TO USE DOCUMENTS

Notice is provided that Plaintiff intends to use any and all materials, tangible things, information and\ or documents produced and or obtained via discovery in this case, subject to applicable to evidentiary rules. This statement is not intended to be, nor is it any admission that matter exchanged in discovery in this case are admissible in evidence.

### XIII

### JURY DEMAND

Intervenor-Plaintiff demands a jury trial and the appropriate jury fee will be paid  in accordance with the law.

WHEREFORE, PREMISES CONSIDERED, Intervenor-Plaintiff, as named herein, seeks damages against the named defendants in atleast the following particulars;

1. Actual damages in excess of $1,000,000.00

2. Punitive damages in an amount in excess of $5,000,000.00

3. Cost and interest (pre and post –judgment );

4. Attorneys fees as permitted at law;  and

5. All other relief to which plaintiff may be entitled

Respectfully submitted,

THE LAW OFFICES OF ELLIOTT CIN

By:     \s\ Elliott Cin

ELLIOTT M. CIN
State Bar No. 04251350
1770 St. James Pl, Suite 120
Houston, Tx. 77056
Tele: (832)741-4638
Fax:  (713) 961-4111
Email: elliottcin@yahoo.com
ATTORNEY FOR INTERVENOR-PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record by certified mail return receipt requested, facsimile, or hand delivery on this the 21 day of July 2016.

ELLIOTT M. CIN