UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SABINA BEBEE, MARY SULLIVAN, NICOLE GARNER, AMY YARBROUGH, ROBERT YARBROUGH, DAVID RENAUD, XAVIER RENAUD, AND BARBARA PEREZ<br><br>*Plaintiffs*<br><br>VS.<br><br>MOTOROLA SOLUTIONS, INC. F/K/A, MOTOROLA , INC., SCOTT TECHNOLOGIES, INC. D/B/A SCOTT SAFETY, INC. AND D/B/A SCOTT HEALTH AND SAFETY, INC.,<br><br>*Defendants* | CIVIL ACTION NO. 4:16-CV-00763<br><br>JURY DEMANDED |

**PLAINTIFFS' THIRD AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs SABINA BEBEE, Individually and on behalf of the Estate of Robert Bebee, MARY SULLIVAN, Individually and as Representative of the Estate of Anne Sullivan, NICOLE GARNER, as Representative of the Estate of Robert Garner, AMY and ROBERT YARBROUGH, DAVID RENAUD as Representative of the Estate of Matthew Renaud, and XAVIER RENAUD and BARBARA PEREZ, Parents of Matthew Renaud (collectively referred to as "Plaintiffs") file this Third Amended Original Complaint complaining of Motorola Solutions, Inc. f/k/a Motorola, Inc. ("Motorola"), and Scott Technologies, Inc. d/b/a Scott Safety, Inc. and Scott Health and Safety, Inc. ("Scott"), and would respectfully show the Court the following:

2

## PARTIES

1. Sabina Bebee is a citizen of the State of Texas, is the surviving mother of Robert Bebee, and was qualified as the personal representative of Robert Bebee's Estate on November 18, 2013. She files her claims individually and as the representative of the Estate of Robert Bebee.

2. Mary Sullivan is a citizen of the State of Texas, is the surviving mother of Anne Sullivan, and was qualified as the personal representative of Anne Sullivan's Estate on May 11, 2015. She files her claims individually and as the representative of the Estate of Anne Sullivan.

3. Nicole Garner is a citizen of the State of Texas, is the surviving sister of Robert Garner, and was qualified as the personal representative of Robert Garner's Estate on September 17, 2013. She files her claims individually and as the representative of the Estate of Robert Garner.

4. Amy Yarbrough and Robert Yarbrough are citizens of the State of Texas.

5. David Renaud, Xavier Renaud and Barbara Perez are citizens of the State of Texas, are the surviving brother, father and mother, respectively, of Matthew Renaud, and David Renaud was qualified as the personal representative of Matthew Renaud's Estate on September 23, 2013. They file their claims individually and on behalf of the Estate of Matthew Renaud.

6. Motorola Solutions, Inc. is a Delaware corporation with its principle places of business situated in Illinois, and which transacts business in the State of Texas. Motorola Solutions, Inc. has previously appeared herein and, thus, no further service is required upon it at this time.

7. Scott Technologies, Inc. is a Delaware corporation with its principle place of business situated in North Carolina. Scott Technologies, Inc. has previously appeared herein and, thus, no further service is required upon it at this time.

## JURISDICTION AND VENUE

8. The Bebee Plaintiffs originally filed this suit in the 11th Judicial District Court of Harris County, Texas, naming as defendants not only Motorola and Scott, but Access Data Supply, Inc. ("ADSI") and CTS Consolidated Telecom Services, Inc. ("CTS"), both of which are citizens of the State of Texas. Motorola thereafter removed the state court litigation to this Court claiming diversity jurisdiction and that ADSI and CTS were improperly joined. The Bebee Plaintiffs filed a motion to remand and on May 30, 2017, this Court entered its Order and Opinion denying the motion to remand holding, among other things, that ADSI and CTS were improperly joined. The Bebee Plaintiffs respectfully submit that the Court erred in denying their motion to remand and, thus, deny that this Court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] Accordingly, by filing this amended complaint the Bebee Plaintiffs do not waive any right to subsequently appeal the Court's order denying their motion to remand.

9. To the extent, if any, that this Court possesses subject matter jurisdiction, venue would be proper in this Court because the events giving rise to the Bebee Plaintiffs' claims arose in whole or in part within the federal Southern District of Texas.

## FACTUAL ALLEGATIONS

10. On May 31, 2013, Robert Bebee, Robert Garner, Anne Sullivan and Matthew Renaud died and Robert Yarbrough was severely injured when parts of a burning structure variously fell on or impacted their bodies and they believed they could be rescued or warned of

---

[1] The Bebee Plaintiffs are refiling their claims against ADSI and CTS in state district court.

dangerous conditions because they were provided communication devices manufactured, designed, marketed, repaired or provided by Defendants. They entered the burning structure confident that if they got in trouble they could radio for help to be immediately assisted. Because they had been led to believe their radio equipment was reliable they entered the structure. The radio devices they trusted were designed, manufactured, repaired and/or marketed by one or more of the Defendants, and/or components of the radio system were designed, manufactured and/or marketed by one or more of the Defendants. Defendants failed to warn and/or train about the limitations and problematic features that would frustrate reasonable radio communications. The firefighters did not know that the radios they trusted would betray them or fail under the very purposes for which they were sold, marketed and intended. Unknown to the firefighters their Motorola and Scott radios, components and system were defective and/or deficient in performance which delayed or prevented instructions to firefighters or cut them off entirely without notification to the users. Also, the manner in which the devices were marketed overstated their reliability, which marketing created confidence in the firefighters that they could enter fire conditions and remain in contact with other firefighters if a danger were to arise.

11. Motorola Solutions sold an approximately $140,000,000 digital trunk radio system to the City of Houston for use by the Houston Fire Department and other departments. That system was allegedly marketed, manufactured, designed and warranted to be suitable for use in fire condition such as were confronted by firefighters during the Southwest Inn fire in question in this case. The system is believed to have been placed in operation by the City while it was still under Motorola's control in March 2013, but as of the date of the deadly fire the City had not accepted the Defendants' tender of the radio system. However, at the time of its implementation, despite representations by the Defendants that the system and components were

suitable for their intended use, they were in fact unsuitable for the anticipated, foreseeable, intended and warranted use. Their failures included at least the following:

    a.    Excessive "bonks" which caused firefighters to be shut out of the system and unable to access the system - 339 times in the first thirty minutes of the fire in question;

    b.    Firefighters were shut out of the system 256 times after the collapse of the roof and when rescue efforts commenced;

    c.    Digital delays between the time a firefighter would speak and the time that the message was actually sent and received by another user;

    d.    Excessive "quick keys" when a radio microphone was accidentally struck causing the Talk Group on the frequency to be "frozen" for 2-4 seconds;

    e.    Unanticipated digital cliffs occurring suddenly, and without warning, when the radios would not allow communications between firefighters standing only a few feet away from one another;

    f.    The use of the same "bonk" tone for both the out of range tone and the Talk Group busy tone so that firefighters could not determine if the Talk Group was busy, and so the firefighters could not determine if they just needed to wait in place to communicate or to move to be able to speak;

    g.    Malfunctioning equipment not suited for firefighting under reasonably foreseeable conditions that allowed the housing and inside wiring of certain parts of the devices to fuse or short out making the radios inoperable;

h. Unsuitable equipment causing the radio of one of the Downed Firefighters[2] to send out multiple keyed microphone signals falsely suggesting voluntary radio activation when no such action was intended by the operator;

i. Bleeding over from one Talk Group to another resulting in additional "bonks" preventing usage during the fire and restricting the available equipment needed for communications during fire and rescue operations;

j. Provision of unsuitable equipment such that almost 6 minutes and 24 seconds of the first hour of the fire presented unusable talk time -- i.e., 10% of the first hour of the fire;

k. Overriding firefighter communications by OEC radios with no notification to the firefighters in the building who would not know the emergency transmissions had not been heard despite indications that it had been successfully transmitted;

l. Using radios with "Emergency Call" buttons that were unsuitable for use in a fire because the buttons were not conducive to use with firefighting gloves, resulting in the preposterous situation that a firefighter in an emergency would have to remove protective gloves in the middle of firefighting to activate the radio's emergency call button.[3]

m. Providing false claims of reliability of the radio system that created misplaced confidence in firefighters that they could enter dangerous structures and remain in contact with rescuers;

n. Failing to train firefighters about the limitations and delays in the new radio equipment;

---

[2] Senior Captain Matthew Renaud, Engineer Operator Robert Bebee, Firefighter Robert Garner and Probationary Firefighter Anne Sullivan are collectively referred to as the Downed Firefighters.
[3] Despite multiple firefighters on scene, trapped and injured, not one "Emergency Call Button" was activated in the Southwest Inn Fire.

    o.    Unreasonably programming a 2-4 second "block-out" when the talk button was depressed, which had the effect of preventing effective communications during the emergency rescue efforts;

    p.    Creating through marketing efforts a false belief that firefighters would reliably remain in contact with help if the need were to arise when no such reliance was reasonably based given the limitations of the system and the transitional limitations in the system.

On May 15, 2013, more than two weeks prior to the deadly fire, representatives of the Defendants and City employees held a meeting during which the City employees notified the Defendants of a number of the defects in the radio system described above.

12.    Because of the failures and limitations of the radio system necessary and foreseeable communications during the fire conditions were unreliable and resulted in firefighters entering dangerous conditions and having to use face-to-face communications, running to the recipients of messages, and delaying the firefighting and rescue operations to the detriment and increased and enhanced injuries to the Downed Firefighters. Plaintiffs intend to show that two of the firefighters could have been saved and removed from the burning structure with only 2 minutes more of rescue time---that time was deprived them because of the defective radio equipment provided by the Defendants.

13.    The Defendants were aware, or should have been aware, of the problems and limitations of the system and despite this knowledge marketed and sold the products representing that they were fit, reliable and suitable for use in fire conditions such as those at issue in this case.

14.    The Motorola APX 7000 radio was supplied with a Scott E-Z Radio System and consisted of three components. The Scott E-Z Radio System components were inadequately

protected from fire conditions with a thin casing that melted and caused involuntary "quick keying" to occur. "Quick keying" is a false indicator of intentional activation of a radio and resulted in Robert Yarbrough entering the building as part of rescue efforts resulting from false notification that a firefighter(s) was activating the quick key. The Defendants' system further did not have any means of advising the users that such alerts might not be intentionally activated as opposed to sounding because of a short in the system caused by the defective Scott equipment. This malfunction, coupled with other unreliable and inadequate radio communications, delayed rescue efforts and enhanced the Downed Firefighters' injuries. Rather than use radio communications which should have been instantaneous, firefighters were forced to yell and attempt more difficult ways of communicating to evacuate individuals. Such complications increased the risks and dangers confronted and sustained by the Downed Firefighters. Had firefighters known how unreliable the Defendants' radio products were they would have used alternative methods rather than imperil themselves during fire and rescue operations. One such alternative would have been not to enter the burning building and continue fire suppression efforts from the outside.

15. Despite its $140,000,000 price-tag, the radio system was regrettably unsuitable for use in fire conditions, delayed or prevented necessary communications, created unrealistic confidence in its reliability, and increased or enhanced the risk of injury, death and harm to the firefighters on the ground and in the burning structure. This defective system resulted in and caused enhanced damages and injuries to the Downed Firefighters. Defendants breached implied and express warranties relating to the communication systems, and failed to train or warn about the dangerous conditions created, encouraged or promoted by their marketing campaign and dangerous equipment.

16. In addition to defects, Defendants marketed and sold the defective radio system without reasonable warnings about the device's limitations, programming defaults, and defects. Indeed, instead of warning of such, Defendants misled, over-stated and/or misrepresented the capabilities of the system, including the failure to disclose frightening limitations that would put the lives of firefighters at risk and resulted in the irreversible injuries to the Downed Firefighters. Both Defendants are liable for the enhanced and actual damages to Plaintiffs complained about in this suit. Further, because the devices concerned life safety issues, the duties owed by all Defendants were non-delegable.

17. Defendants' conduct, jointly and severally, was more than mere negligence or oversight, but was of such a reckless, defective and unconscionable nature that it rises to the level of legal malice and/or gross negligence. Defendants' conduct caused the Downed Firefighters to enter burning structures with the misplaced trust and confidence that they could get out or be rescued quickly if they radioed for help. Instead, the communications were crippled and unable to convey even basic information to facilitate a speedy rescue. Defendants, jointly and severally, should be punished for their dangerous and reckless marketing and conduct. Plaintiffs seek punitive damages from each Defendant. Further, to the extent the Defendants aggressively marketed the capabilities of the radio system, but failed to warn of its limitations or train firefighters regarding its programming and operational limitations, the Defendants were flagrant in their gross negligence. The Defendants were engaged in an ultra-hazardous business activity or inherently dangerous activity and are strictly liable for the losses and damages complained of in this case.

18. In addition to the deceased firefighters and Robert Yarbrough, this suit is filed on behalf of the wrongful death beneficiaries and loved ones possessing claims for the loss of their

loved ones, loss of consortium, loss of society, support, love and affection. Each of the Plaintiffs seeks damages, both compensatory and punitive, from each of the Defendants. The survival claims of the deceased Plaintiffs are also brought in this suit against the Defendants, jointly and severally.

### ADDITIONAL CAUSES OF ACTION OF PLAINTIFF MARY SULLIVAN

19. For reasons alleged herein and as may be proved at trial, each of the Defendants is liable for one or more of the following claims that was/were a proximate or producing cause of Plaintiff Sullivan's losses and damages: design defect, manufacturing defect, deceptive trade practices, strict liability, marketing defect, failure to warn, breach of express and implied warranties, and for enhanced damages. The marketing defects included at least the following:

- representing that the radio system provided reliable communications when life and limb were at stake;
- representing that the radio system and radios provided reliable controls for command operations;
- failing reasonably to disclose the restrictions and limitations of the system and radios;
- failing to disclose problems about the "bonk," built in delays and 2-4 second shut-outs designed into the radio devices;
- providing unreasonable and incomplete instructions on how the radios would fail to operate in real life and death scenarios;
- failing to provide reasonable warnings to firefighters regarding operational limitations of the radio system prior to the fire made the basis of this suit; and
- overstating the abilities and reliability of the radio devices and communication system.

Had Plaintiff Sullivan's decedent, Anne Sullivan, known that Defendants' devices and communication system were not as reliable as advertised and marketed, or that these devices would interfere with and impede the ability of others to reasonably communicate during a fire or rescue event, she would not have taken the risks that she did take or would have taken other measures to safeguard against risks that resulted in her suffering and death complained of in this suit.

20. Defendants, jointly and severally, were also negligent in designing, manufacturing, warning, training, and/or marketing the products and their negligence was a proximate or producing cause of Plaintiff Sullivan's damages and enhanced damages. Plaintiff Sullivan also alleges that Defendants' products were intended to be used in inherently dangerous activities and, as such, Defendants are strictly liable for the damages complained of in this suit. Defendants were also negligent in failing to provide reasonable warning about and training regarding their products. Defendants were also involved in an inherently dangerous activity and are strictly liable for the losses being sought in this case.

21. Plaintiff Sullivan would further show that each of the acts, conduct and/or omissions of the Defendants, taken singularly or in combination, constitutes gross negligence, legal malice and were proximate and/or producing causes of the injuries and damages suffered by Plaintiff Sullivan. The conduct, acts and omissions of Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm, Defendants had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of the firefighters and their loved once. Such gross negligence/legal malice entitles Plaintiff Sullivan to recover exemplary damages against each Defendant.

22. Defendants' conduct also constitutes deceptive trade practices and punitive and/or treble damages should be awarded against the offending Defendants pursuant to the Texas Deceptive Trade Practices Act.

### CAUSES OF ACTION BY ALL PLAINTIFFS

23. The allegations contained herein are incorporated by reference as if set forth in full. Plaintiffs allege that the wrongful conduct of the Defendants were a producing, proximate and actual cause of their damages complained of in this case.

24. Plaintiffs further allege and intend to show that the Defendants breached express warranties set forth in the purchase agreement between the City and the Defendants for the radio equipment and radio system, as well as the statutory implied warranties of merchantability and fitness for a particular purpose as provided in Tex. Bus. & Comm. Code Ann. §§ 2.314 and 2.315.

### DAMAGES

25. Plaintiff Robert Yarbrough is suffering severe and permanent disabling injuries, including closed head injury, traumatic brain injury, PTSD, broken bones and body, and loss of the ability to function as he once did prior to the fire. All Plaintiffs seek damages for injuries, as applicable, as follows: (a) past pain and suffering; (b) future pain and suffering; (c) past disfigurement; (d) future disfigurement; (e) past impairment; (f) future impairment; (g) past mental anguish; (h) future mental anguish; (i) past lost wages; (j) future lost wages; (k) past medical and other expenses; and (l) future medical and other expenses.

26. Plaintiffs Sabina Bebee, Mary Sullivan, Nicole Garner, David Renaud, Xavier Renaud, and Barbara Perez further seek their individual damages as claimants against each of the Defendants, and representatively on behalf of the deceased firefighter plaintiffs as allowed at law.

27. Plaintiffs seek damages which are in excess of $1,000,000 each and all conditions precedent to bring the claims in this case have occurred or been performed by Plaintiffs.

28. Plaintiffs request a jury trial in this case.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, as named herein, seek damages against the named Defendants in at least the following particulars:

1) Actual damages in excess of $1,000,000.00 each;

2) Punitive damages in an amount in excess of $5,000,000.00;

3) Costs and interest (pre-and post-judgment);

4) Attorney's fees as permitted at law; and

5) All other relief to which Plaintiffs may be entitled.

                        Respectfully submitted,

                        /s/ Benjamin L. Hall, III
                        Benjamin L. Hall, III
                        State Bar No. 08743745
                        Federal Bar No. 8787
                        bhall@bhalllawfirm.com
                        William L. Van Fleet II
                        State Bar No. 20494750
                        Federal Bar No. 3670
                        bvfleet@comcast.net
                        The Hall Law Firm
                        530 Lovett Blvd.
                        Houston, Texas  77006
                        Telephone:  (713) 942-9600
                        Facsimile:  (713) 942-9566

                        **ATTORNEYS FOR PLAINTIFFS**

**OF COUNSEL:**

/s/ Levi J. Benton
Levi J. Benton
State Bar No. 00783638
Federal Bar No. 15206
Levi Benton & Associates PLLC
3417 Milam
Houston, Texas 77002
Telephone: 713-521-1717
Facsimile: 713-588-8462
lbenton@levibenton.com

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were served with the above and foregoing Third Amended Complaint in accordance with the Federal Rules of Civil Procedure on June 9, 2017.

/s/ Benjamin L. Hall III
Benjamin L. Hall III
